**NEW ENGLAND FISH COMPANY and American Motorists Insurance Company, Plaintiffs,**

v.

**WESTERN PIONEER, INC.; East Point Seafoods, Inc. et al.; and Queen Fisheries, Inc., Defendants.**

**No. C78–689B.**

United States District Court,
W. D. Washington.

Feb. 26, 1981.

Michael H. Williamson of Madden, Poliak, MacDougall & Williamson, Seattle, Wash., for plaintiffs.

Richard L. Phillips of Moriarty, Mikkelborg, Broz, Wells & Fryer, Seattle, Wash., for Western Pioneer, Inc.

Thomas W. Huber of Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash., for Point Seafoods, Inc. and Queen Fisheries, Inc.

## MEMORANDUM OF DECISION

BEEKS, District Judge.

This is an action for damage to 2,513 cases of king crab occurring on a voyage of the M/V DOLPHIN. New England Fish Company (NEFCO) and its insurance carrier seek recovery against Western Pioneer, Inc. (Western) and Queen Fisheries, Inc. (Queen) who are respectively the owner/operator and time charterer of the vessel. Defendants admit that the crab was damaged during the voyage but contend that plaintiffs are either estopped from recovery against them or have waived the right thereto. Trial was had before this court on January 20, 1981.

## BACKGROUND

In October of 1977, Queen was using the DOLPHIN to transport fish and related cargo between Kodiak, Alaska and Seattle, Washington. On October 4, NEFCO and Pan Alaska Fisheries (Pan Alaska) learned that there was available cargo space on the DOLPHIN for a trip commencing at Kodiak on that day. Each independently requested permission from Queen to ship its cargo aboard the vessel.

A representative of Frank B. Hall & Co., insurance brokers, acting on behalf of Queen, contacted NEFCO and Pan Alaska by telephone and informed each of them that the vessel would accept the cargo for shipment but only if each would (1) agree to have Queen and Western named as additional insureds on its cargo insurance policy, and (2) obtain waivers of subrogation from its insurance carrier in favor of Queen and Western. Both NEFCO and Pan Alaska gave oral assurances during the telephone conversations that these requirements would be met and that written confirmation was forthcoming. Thereafter, on October 4 or 5, DOLPHIN accepted the cargo and commenced its voyage.

The timing of subsequent events is significant. First, NEFCO's agents delayed contacting its insurer until October 10 regarding Queen's requirements for carriage. Although some doubt that the requirements would be met was raised by the insurer at this time, NEFCO did not inform Queen of this fact nor contact Queen in any way. On October 24, the vessel arrived in Seattle and it was discovered that the crab was damaged. By this time Queen had received written confirmation from Pan Alaska that it had obtained the required endorsement and waiver. It was not until November 9, however, that NEFCO's insurer informed NEFCO and Queen that it would not name Queen and Western as insureds nor waive rights of subrogation. This action was commenced a year later. Pan Alaska, because it had confirmed in writing its previous assurance, is not a party to this action.

Although defendants admit that the crab was damaged while in their custody, it is their contention that they justifiably relied upon assurances given by NEFCO that the requirements for carriage would be satisfied and hence they should not be liable for the damage. Conversely, plaintiffs contend

that they did not give any such assurances which could be relied upon. I find, however, that the assurances were given by NEFCO. Thus, the ultimate issue herein presented is whether the doctrine of estoppel applies to prevent plaintiffs from recovering.

## ESTOPPEL

 When justice demands, the well established doctrine of equitable estoppel may arise. The doctrine, in principle, holds that when one party leads another to do a thing which otherwise he would not have done, such party shall not subject that other to loss or injury by disappointing the expectations acted upon. *See United States v. Georgia Pacific Co.*, 421 F.2d 92 (9th Cir. 1970); *Associated Tabulating Services, Inc. v. Olympic Life Ins. Co.*, 414 F.2d 1306 (5th Cir. 1969). The elements of estoppel are as follows: (1) Words, conduct, or silence amounting to a misrepresentation of a (2) material fact by the party against whom the estoppel is asserted, and (3) the misrepresentation is not known to be false by the party asserting the estoppel, and (4) upon which misrepresentation the party relies, (5) justifiably, (6) resulting in detriment to that party. *United States v. 31.45 Acres of Land*, 376 F.Supp. 1277 (E.D.Wash.1974).

On the evidence presented, I find the elements of estoppel to exist. Queen would not have allowed NEFCO's crab to be shipped on DOLPHIN without the aforesaid assurances from NEFCO. Thus plaintiffs are not entitled to prevail.

## WAIVER

Defendants also claim that the plaintiffs have waived their right to recovery by paying the freight due to Queen for the carriage of the crab without asserting that such payment was to be without prejudice to making any claim for damages. In view of my disposition of the estoppel issue, however, I need not address this issue.

## CONCLUSION

Accordingly, plaintiffs' claim for relief against Western Pioneer, Inc. and Queen Fisheries, Inc. is dismissed with prejudice. This Memorandum of Decision shall constitute the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.