## BANK OF AMERICA, N.A., & S.A., Plaintiff

### v.

## ROBERT FRANKLIN MOYER, Individually and as Trustee of the Robert Franklin Inter Vivos Trust, Defendant

Civil No. 275/1981

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

August 10, 1982

---

JOHN G. SHORT, ESQ., St. Thomas, V.I., *for plaintiff*

ETHEL C. H. MITCHELL, ESQ., St. Thomas, V.I., *for defendant*

HODGE, *Presiding Judge*

## MEMORANDUM OPINION

### I. INTRODUCTION

This matter is before the court on cross motions for summary judgment. The question presented is whether defendant (customer) is liable to plaintiff (bank) for certain funds paid by the bank to the customer's creditors. For the reasons which follow, the court concludes that there are no genuine issues of material fact, and that plaintiff is entitled to judgment as a matter of law.

### II. UNDISPUTED FACTS

During 1979, defendant, in his capacity as Trustee of the Robert Franklin Moyer Inter Vivos Trust, negotiated to purchase certain real and/or personal property at the Pott Rum distillery site in St. Thomas, Virgin Islands, from Crown Harbor Distillers, Inc., the owner of the property, and West Indies Distillers, Ltd., the sole stockholder of the owner, both Virgin Islands corporations. The defendant buyer was represented in the transaction by George Hubschman, Esquire, a Virgin Islands attorney, while the corporate sellers were represented by Frederick Rosenberg, Esquire, a partner in the Virgin Islands law firm of Bailey, Wood and Rosenberg.

Under the terms of the Purchase Agreement which was executed on December 17, 1979, defendant agreed to pay the sum of ONE MILLION DOLLARS ($1,000,000) for the property, payable by the assignment of a $25,000 Certificate of Deposit (due to mature on March 13, 1980) upon the signing of the agreement and by the payment of the balance of $975,000 at closing on April 30, 1980. Among other things, the agreement also provided that if the defendant defaulted, the $25,000 down payment, less accrued interest, would be forfeited to the sellers.

As agreed, defendant executed a written assignment of the $25,000 Certificate of Deposit on December 17, 1979, contemporaneous with the execution of the Purchase Agreement. The assignment instructed the Main Bank of Houston to transfer ownership of CD

#MM-10209 to Frederick Rosenberg, Esquire, as attorney for the sellers, and recited the receipt number (#9743), the Purchase Agreement, the date of maturity (March 13, 1980), the amount ($25,000), and the fact that the document constituted notice to the Main Bank of Houston of the assignment and of their authorization to effectuate the transfer.

On March 18, 1980, after maturity of the Certificate of Deposit, Attorney Rosenberg instructed the Main Bank of Houston to forward the $25,000 from the matured Certificate of Deposit to the Bank of America in St. Thomas, Virgin Islands for deposit to a special account in the name of his law firm, Bailey, Wood and Rosenberg. Pursuant to those instructions the Main Bank of Houston forwarded the $25,000 by Cashier's Check No. 17692 dated March 18, 1980, and addressed as follows:

Bank of America, St. Thomas, Virgin Islands
Attn: Keith Garton, Mgr.
for the credit of Bailey, Wood, & Rosenberg
Special Account

These funds were received by the Bank of America on April 1, 1980, were deposited into the Special Account as authorized by Attorney Rosenberg, and remained on deposit until they were withdrawn by him on behalf of the sellers some months later.

Meanwhile, on or about April 2, 1980, an Assistant Cashier of Bank of America, having been told by the Bank Manager that $25,000 of Robert Moyer's money had arrived, told defendant, during an unrelated telephone conversation, that his money was in, and he replied that he would be in to take care of the money. On April 3, 1980, defendant entered the bank, led the Assistant Cashier to believe that the funds belonged to him, filed written applications for four cashier's checks and one bank draft payable to his personal creditors, caused the Bank of America to issue those negotiable instruments which totalled $25,030, and accepted them from the Assistant Cashier, all of which have been negotiated and paid by the Bank of America, except a $300 check payable to his attorney George Hubschman, Esquire. The defendant knew that the funds were the proceeds of the $25,000 Certificate of Deposit which had already been transferred from his Houston account to the Rosenberg account in St. Thomas. He did not advise the Assistant Cashier of these facts.

The Assistant Cashier discovered her mistake when she was unable to charge the cost of the checks and draft against the Special

Account. She then realized that the $25,000 did not belong to defendant but to Attorney Rosenberg on behalf of the sellers, and that the funds paid out to Mr. Moyer's creditors were paid from other bank funds by mistake.

Despite repeated demands by Bank of America for reimbursement of the funds, defendant has refused to repay the amounts due and owing, claiming that the $25,000 belonged to him because of the sellers breach of the Purchase Agreement and because he never endorsed the Certificate of Deposit.

Plaintiff has paid out $25,000 to the sellers, plus an additional $25,030 to the defendant, while collecting only $25,000 from the matured Certificate of Deposit. Plaintiff now demands that defendant repay the $25,030 which was paid to his creditors at his request.

## III. ANALYSIS

### A. *Mistake and Unjust Enrichment*

■ It is well established that money paid under a mistake of fact may be recovered, and specifically that a bank is entitled to restitution of funds which have been paid out by mistake. Indeed, restitution will not generally be precluded because the funds were disbursed as a result of negligence. See RESTATEMENT OF RESTITUTION § 22 (1937); Bank of Naperville v. Catalano, 508 N.E.2d 441 (Ill. App. 1980); and Annotation, Recovery by Bank of Money Paid Out to Customer by Mistake, 10 A.L.R.4th 526 (1981).

■ In this case, it is clear that the plaintiff mistakenly paid out the $25,030 to defendant's creditors because the funds had been sent by defendant's bank in Houston, Texas, from defendant's Certificate of Deposit, pursuant to the assignment. Although the funds were sent by his bank from his Certificate of Deposit, they belonged to Attorney Rosenberg on behalf of the sellers because of the assignment. Since a special account had been established to receive those funds, and since the funds were deposited in that special account over which defendant had no right, interest, title or control, he could not withdraw those funds nor charge them for payments made to his creditors.

■ Despite the fact that the Assistant Cashier should have verified the account before issuing the cashier's checks and bank draft to the defendant, her negligence resulted from her misinterpretation of the oral statement from the Bank Manager that Mr. Moyer's money had arrived. Nevertheless, this negligence does not and cannot preclude restitution from the defendant where, as here, the cus-

tomer has been unjustly enriched. Under the theories of Mistake and Unjust Enrichment, a party must make restitution where the funds paid did not belong to him, where the funds were mistakenly paid to him or on his behalf to others, and where he benefited by the erroneous payments. Annotation, 10 A.L.R.4th 526 (1981), supra. Hence, unearned payments by a bank to a customer or his creditors by mistake or negligence by the bank which redounds to the benefit of the customer, constitutes unjust enrichment of the customer, thereby entitling the bank to restitution of the overpayments. Maplewood Bank & Trust Co. v. F.I.B., Inc., 362 A.2d 44 (N.J. 1976).

■ RESTATEMENT (SECOND) OF CONTRACTS § 317(1) defines an assignment of a right as a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished and the assignee acquires the right to such performance. Accordingly, any right which defendant may have had in the Certificate of Deposit would have been extinguished when he executed the assignment, and those rights would have been acquired by the sellers. The defendant's major premise, that the Purchase Agreement was of no force and effect due to the sellers' default and that he never endorsed the Certificate of Deposit, is blatantly misleading and specious, since he had previously authorized its negotiation by the sellers when he executed the assignment, gave notice of the assignment to the Houston bank, and instructed them to proceed accordingly. Perhaps defendant admits that he executed the assignment only because he must, for his major premise is legally destroyed by the admission. The assignment was not and could not be void by sellers' default, if any, and defendant's recourse in such an event was the filing of a breach of contract action against the sellers to recover his $25,000 down payment, which he had effectively transferred to them from the date of the execution of the assignment. Indeed, even if he truly believed that the funds belonged to him, he was mistaken, and mutual mistake is a valid basis for restitution. Maplewood Bank & Trust Co. v. F.I.B., Inc., supra.

■ Here, the defendant knew that the funds forwarded from his Houston bank did not belong to him because he had previously, by written assignment, transferred title and interest in those funds to the sellers, through their attorney. Yet, he failed to advise the Assistant Cashier of those facts when she mistakenly told him that his funds had arrived. Instead, defendant prepared a list of his creditors to whom he wanted the funds distributed, made written appli-

225

cation for their issuance, and received the checks with full knowledge of his misrepresentation. Thus, since the funds did not belong to defendant, since they were mistakenly paid to him, since he benefited by the mistaken payments, and since he has refused to reimburse the bank, he must now make restitution in the sum of $25,030.00 for the overpayment.

B. *Breach of Contract and Fraudulent Misrepresentation*

In the alternative, the court also concludes that the defendant is liable in the sum of $25,030 under both the theory of Breach of Contract and the theory of Fraudulent Misrepresentation.

■ When the defendant filed written applications for four cashier's checks and one bank draft payable to his creditors, a debtor-creditor relationship was established between him and the bank when the checks which totalled $25,030, were issued to him. Defendant's application constituted an offer, the bank's issuance of the checks constituted an acceptance, and defendant's implied promise to pay and the bank's actual payment of the funds constituted the mutual consideration. The checks, being negotiable instruments, were not subject to any underlying transaction between defendant and the sellers, and had to be honored by the bank when presented by any holder in due course. Thus, in exchange for the bank's commitment to honor the checks, the defendant in effect promised to pay the bank the full value of those checks, and since he had no funds in the bank against which the checks could be debited, he is obligated to repay those funds to the bank, which he has refused to do. His refusal results in a failure of his consideration and constitutes a breach of his contractual obligation to the bank. RESTATEMENT (SECOND) OF CONTRACTS §§ 237, 243; Schulze v. Rayunee, 350 F.2d 666 (7th Cir. 1965), cert. denied 382 U.S. 919 (1965).

■ Finally, it is undisputed that defendant failed to disclose to the Assistant Cashier that the $25,000 was forwarded to the Bank of America for deposit to the Special Account of the seller's attorney, and that his claim to those funds was based upon an alleged breach of the Purchase Agreement. Had this disclosure been made, it is obvious that the Assistant Cashier in verifying the account would have discovered that defendant was not entitled to those funds and had no such other funds deposited to his credit. Even if defendant assumed that he was entitled to the $25,000 from the bank, it was his duty to disclose those basic facts of the transaction to the Assistant Cashier. His failure to do so constituted a misrepresentation,

and this misrepresentation was fraudulent because he knew that he had previously transferred those funds to the sellers, that the bank would and did justifiably rely on his misrepresentation, and that it suffered damages in the sum of $25,030 as a result thereof. RESTATEMENT (SECOND) OF TORTS §§ 525, 540, 551.

In the circumstances of this case, I consider defendant's conduct to be totally reprehensible. Defendant knew that the maturity date of the Certificate of Deposit was March 13, 1980, in Houston, Texas, yet he waited until April 2, 1980, while discussing unrelated matters with the plaintiff's Assistant Cashier in St. Thomas, V.I., to assert his claim to the funds, and then only after the Assistant Cashier erroneously told him that his money had arrived. The defendant knew that the money did not belong to him, and that the Assistant Cashier was mistaken. Nevertheless, he proceeded to authorize the disbursement of $25,030 to his creditors for his benefit, and thereafter refused to reimburse the bank when the mistake was discovered. Defendant's fraudulent misrepresentation is abhorrent, and such conduct cannot be condoned. At the very least, maximum prejudgment interest must be assessed against the defendant on the $25,030 from April 3, 1980 to the date of judgment.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment will be GRANTED and defendant's motion for summary judgment will be DENIED.

## SUMMARY JUDGMENT

For the reasons stated in the accompanying Memorandum Opinion, it is hereby,

ORDERED, ADJUDGED, AND DECREED that plaintiff's motion for summary judgment is GRANTED, and plaintiff is awarded SUMMARY JUDGMENT against the defendant in the sum of $25,030, plus pre-judgment interest at 10.294% from April 3, 1980, to date of this judgment, plus post-judgment interest of 9% from date of this judgment until paid, and it is,

FURTHER ORDERED that defendant's motion for summary judgment is DENIED, and it is,

FURTHER ORDERED that plaintiff shall be reimbursed its costs and attorney's fees by the defendant, after submission of appropriate affidavits, and approval by the court.