

**FILED**
May 18, 2023 11:10 AM
ST-2021-CV-00051
**TAMARA CHARLES**
**CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
\*\*\*\*\*\*

| | | |
|---|---|---|
| JOHN C. KIRKLAND, | ) | CASE NO.: ST-21-CV-051 |
| | ) | |
| Plaintiff, | ) | ACTION FOR BREACH OF |
| v. | ) | CONTRACT, BREACH OF IMPLIED |
| | ) | DUTY OF GOOD FAITH AND FAIR |
| WALTER FEDDERSEN, JANE FEDDERSEN, | ) | DEALING, BREACH OF FIDUCIARY |
| JEYAN K. STOUT, and STOUT REALTY, LLC | ) | DUTY, TRESPASS, NEGLIGENT |
| d/b/a COLDWELL BANK STOUT REALTY, | ) | SUPERVISION, CONVERSION, |
| | ) | UNJUST ENRICHMENT AND |
| Defendants. | ) | DECLARATORY JUDGMENT |
| | ) | |

| | | |
|---|---|---|
| WALTER FEDDERSEN and JANE FEDDERSEN, | ) | |
| | ) | CASE NO.: ST-23-CV-050 |
| Plaintiffs, | ) | |
| | ) | ACTION FOR BREACH OF |
| v. | ) | FIDUCIARY DUTY, NEGLIGENCE, |
| | ) | BREACH OF LISTING AGREEMENTS, |
| JEYAN K. STOUT, and STOUT REALTY, LLC | ) | BREACH OF INDEMNIFICATION & |
| d/b/a COLDWELL BANK STOUT REALTY, | ) | CONTRIBUTION & DECLARATORY |
| | ) | RELIEF |
| Defendants. | ) | |
| | ) | 2023 VI Super 25U |

**A.J. STONE, ESQ.**
BoltNagi P.C.
Merchants Financial Center
4608 Tutu Park Mall, Ste. 202
St. Thomas, V.I. 00802
*Attorneys for Plaintiff*

**A. JEFFREY WEISS, ESQ.**
9800 Buccaneer Mall
Building 1, Suite 15
St. Thomas, V.I. 00802
*Attorneys for Defendants*
*Walter Feddersen and Jane Feddersen*

**KYLE R. WALDNER, ESQ.**
Waldner Law, P.C.
1026 Norre Gade
Kings Quarter
St. Thomas, V.I. 00802
*Attorneys for Defendants*
*Jeyan K. Stout & Stout Realty d/b/a*
*Coldwell Bank Stout Realty*

**ROBERT L. KING, ESQ.**
King & King Law, P.C.
5043 Norre Gade, 11A, Ste. 2
St. Thomas, V.I. 00802
*Attorneys for Defendant*
*Jeyan K. Stout*

**CARTY, RENÉE GUMBS, Judge**

## MEMORANDUM OPINION

¶1.    **BEFORE THIS COURT** is "Plaintiff's Motion to Dismiss Defendants Walter Feddersen and Jane Feddersen's Counterclaim to Plaintiffs' Second Amended Complaint" filed on February 6, 2023. Walter Feddersen and Jane Feddersen (hereinafter "the Feddersen Defendants") filed their opposition on February 15, 2023, and Plaintiff John C. Kirkland (Kirkland) replied on February 27, 2023. Plaintiff Kirkland then filed a supplement to his motion to dismiss on May 11, 2023. For the reasons explained below, Plaintiff's motion will be granted in part and denied in part.

### I.    BRIEF FACTUAL AND PROCEDURAL HISTORY

¶2.    On May 22, 2020, the Feddersen Defendants listed their property located at 6H Estate Nazareth, St. Thomas, Virgin Islands for sale with Coldwell Bank Stout Realty d/b/a as Stout Realty (Stout Realty). Jeyan K. Stout (Stout) is the principal of Stout Realty (hereinafter interchangeably referred to as the Stout Defendants). The property was listed at $2.85 million. Stout showed the property to Kirkland and on August 4, 2020, Kirkland and the Feddersens entered into a one (1) year lease agreement commencing on September 1, 2020, and ending on August 31, 2021.

¶3.    The lease agreement contained a clause providing Kirkland with a right of first refusal ("ROFR") in the event he decided to purchase the property. Due to the property's unique location

2

providing views of the Caribbean Sea, St. John, Greater St. James, Pillsbury Sound, and Water Point, and amongst its other features, Kirkland decided to buy the property.

¶4.    Despite the lease term expiring on August 31, 2021, Kirkland vacated the premises on January 28, 2021, due to several disputes that transpired during the tenancy. On February 2, 2021, Kirkland brought this action against the Feddersens and Stout defendants, and subsequently filed the Second Amended Complaint on March 7, 2022, consisting of ten (10) counts, including three (3) counts of breach of contract, one count each of breach of the implied duty of good faith and fair dealing, breach of fiduciary duty, trespass, negligent supervision, conversion, unjust enrichment, and declaratory judgment.

¶5.    On December 23, 2022, the Feddersens filed an Answer and Counterclaim setting forth nine (9) counterclaims as follows: Count I – Breach of Lease, Count II - Intentional Destruction of Property, Count III – Defamation, Count IV – Attempt to Obtain Money by False Pretenses, Count V - Intentional Infliction of Emotional Distress, Count VI – Slander of Title, Count VII– Abuse of Process, Count VIII – Interference with Contract, and Count IX – Negligence. Kirkland seeks to dismiss all the counterclaims.

## II.    STANDARD OF REVIEW

¶6.    Plaintiff initially moved to dismiss three (3) counterclaims under the gist-of-the-action doctrine and dismissal of the remaining six (6) claims on various grounds.  The gist-of-the-action is a common law doctrine devised to "maintain the conceptual distinction between breach of contract claims and torts claims." *V.I. Port Auth. v. Callwood*, No. ST-11-CV-305, 2014 WL 905816, at *3 (V.I. Super. Ct. Feb. 28, 2014). The doctrine therefore precludes plaintiffs from recasting ordinary breach of contract claims into tort claims when the duties allegedly breached arose. *Id.* At the time of filing, the Virgin Islands Supreme Court had not determined whether the gist of the action rule is applicable in this

3

jurisdiction. *Franken v. Sisneros & Conundrum Mktg, LLC*, No. 2016 WL 11723593, at *4 n. 8 (V.I. Super. Ct. April 18, 2016). However, in the most recent case *Robertson v. Banco Popular de Puerto Rico*, 2023 VI 3, at *3 (2023), the Supreme Court ultimately held that the doctrine does not apply in the Virgin Islands because it would otherwise impair the administration of justice by barring plaintiffs from bringing potentially meritorious claims. *Id.* While the Supreme Court rejected the gist of the action doctrine, they neither endorsed nor rejected the economic loss doctrine which Plaintiff has now urged this Court to consider.

¶7.     The economic loss doctrine forbids a party from suing or recovering in tort for economic or pecuniary losses that stem only from breach of contract or are associated with the contractual relationship. 74 Am. Jur. 2d *Torts* § 24. In other words, tort damages are generally not recoverable unless the plaintiff suffers an injury that is independent and separate from the economic losses recoverable under a breach-of-contract claim. *Id.* Courts similarly hold that the economic-loss doctrine prohibits recovery under tort for purely economic losses or for economic losses that are not also accompanied by a tangible hard or physical injury to persons or other property. *Id.* The doctrine provides that a contracting party who suffers purely economic losses, which is the loss of the benefit of one's bargain, must seek his or her remedy in contract and not in tort as such claims are instead governed by contract law. *Id.* Thus, where a plaintiff may recover economic loss under a contract, generally, a cause of action in tort for purely economic loss will not lie. *Id.*

¶8.     How does the economic loss doctrine apply to intentional destruction of property, interference with contract, and negligence? Historically, in the Virgin Islands, the economic loss doctrine was only applicable in products liability cases. *Finley v. Government of the Virgin Islands*, 2019 WL 7987453 (2019), citing *Turnbull v. University of the Virgin Islands*, 2016 WL 1047893, at *2-3, 2016 V.I. LEXIS 22, at *7 (V.I. Super. Ct. March 2, 2016), which has since expanded the doctrine to negligent

4

misrepresentation cases. Courts have determined that the economic loss doctrine should be applied on a case-by-case basis as it may be fact-intensive. *Government of the Virgin Islands v. Takata Corporation,* 267 V.I. 316, 2017 WL 3390594 (Super. Ct. June 19, 2017). As discussed below, intentional destruction of property directly implicates the lease agreement, therefore the economic loss doctrine is inapplicable there. Both interference with a contract and negligence are considered tortious conduct, but the economic loss doctrine may only be applicable to the negligence claim.

¶9. Notably, apart from setting forth the above-referenced doctrines, neither Kirkland's motion to dismiss filed on February 16, 2023, nor the supplement filed on May 11, 2023, refers to any standard of dismissal under Rule 12 of the Virgin Islands Rules of Civil Procedure. When determining a 12(b)(6) motion, the courts ask not whether a plaintiff will ultimately prevail, but whether they are entitled to offer evidence in support of their claim. *Pedro v. Ranger Am. of the V.I., Inc.* 70 V.I. 251, 264 (Super. Ct. 2019). The courts must accept all well-pleaded allegations as true and view them in a light most favorable to the pleader. *Smith v. Law Office of Karin Bentz P.C.*, 2017 V. I. LEXIS 111. at *3 – 4 (V. I. Super Ct. 2017). Rule 8(a)(2) provides "a pleading that states a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" It expressly provides that the Virgin Islands "is a notice pleading jurisdiction" and therefore a complaint meets the standard so long as it "adequately alleges facts that put an accused party on notice of claims brought against it." *Mills-Williams v. Mapp*, 67 V.I. 574, 585 (2017) at *4, 2017 WL 2998939. However, despite Kirkland's failure to cite the specific subsection pursuant to Virgin Islands Rule of Civil Procedure 12, the Court will interpret this motion as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

### III. LEGAL ANALYSIS

¶10. First, Kirkland argues that Count I - Breach of Lease, should be dismissed on the premise of the Feddersens' failure to allege that Kirkland's actions were not privileged by his rights of exclusive possession of the premises. In effect, Kirkland argues by the Feddersens not claiming Kirkland lacked a privilege, the action should be dismissed. Kirkland does not cite to any particular rule for which he relies upon to support his argument. Kirkland offers a distinction between a landlord-tenant relationship and a regular contractual relationship. He argues the landlord-tenant relationship possesses the special privilege of exclusivity of the premises for use by the tenant and as a privilege that is transferred from the landlord to the tenant, breach of contract elements are inapplicable.

¶11. The Court finds this argument to be unpersuasive. The Feddersens complied with V.I.R. Civ. P. 8(a) by sufficiently stating a claim for breach of the lease that sets forth in detail the facts supporting the allegations in count I of the counterclaim. Kirkland's arguments are unsubstantiated because the parties entered into a written lease agreement. To establish a breach of contract claim under Virgin Islands law, a plaintiff must establish: "(1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 135 (V.I. 2009). Here, the Feddersens specifically reference the existence of a lease agreement, covenants, and duties of each party under the lease agreement and how Kirkland violated those obligations under the lease. As such, the Feddersens have sufficiently pled a breach of a lease agreement claim indicating which contract provisions were violated. Therefore, the Court finds Count I has been sufficiently plead as it meets the requirements of V.I.R. Civ. P. Rule 8. Therefore, the beach of lease claim will not be dismissed.

¶12. Second, Intentional Destruction of Property, under count II refers to the changing of three locks and the padlock and the damage caused by these changes rendering the locks inoperable. The

6

Feddersens acknowledge that although the claim for intentional destruction of property may not be actionable in the Virgin Islands as a civil claim, it is criminal conduct and they can still assert their rights under conversion. The Supreme Court of the Virgin Islands in *Ross v. Hodge*, 58 V.I. 292 (2013), has adopted the common law definition of conversion traditionally defined by the Restatements.[1] The Restatement 2d of Torts § 222A defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Rest. 2d of Torts §260(1) (1965) further provides that a person "is privileged to commit an act which would otherwise be a trespass to a chattel or a conversion if the act is, or is reasonably believed to be, necessary to protect the actor's land or chattels or his possession of them, and the harm inflicted is not unreasonable as compared with the harm threatened."

¶13.	Here, the Feddersens allege that by virtue of destroying and changing the locks, Kirkland not only violated the terms of the lease, but also committed a conversion. The Feddersens claim that on January 19, 2021, Kirkland admitted in an email that he improperly changed the locks at the premises without the landlord's consent and refused to turn over the new keys in violation of the lease.[2] Next, they state on January 29, 2021, Kirkland deliberately, intentionally, and maliciously damaged three (3) newly installed locks and a new padlock for the front gate after Kirkland abandoned the premises,[3] which constitutes tortious property damage, i.e., conversion, accordingly. Kirkland reduces, however,

---

[1] *Isaac v. Crichlow*, 63 V.I. 38, 58 (2015) (citing *Chase Manhattan Bank, N.A. v. Power Products, Inc.* 27 V.I. 126 (V.I. Terr.Ct. 1992)); see also *Addie v. Kjaer*, 51 V.I. 463, 473 (D.V.I. Feb. 23, 2009) (adopting verbatim the common law definition of conversion).

[2] Defendants Feddersens' Answer, Affirmative Defenses, and Counterclaim, p. 16, para. 35; see also Paragraph 18 of the lease agreement that provides the following condition: "Tenants shall not alter any lock or install any new lock on the premises without written consent of landlord."

[3] *Id*, p. 19, para. 50; p. 21, para. 61; p. 22, para. 69.

the change-out of the locks to an issue arising out of the terms of the lease agreement, but fails to recognize the social obligation of not engaging in an act that results in the destruction of another's property. As this Court previously noted,[4] it is not aware of any cognizable claim for intentional destruction of property in the Virgin Islands in a civil action[5], however the torts of conversion and trespass to chattel provide for a cause of action against a person who intentionally damages or destroys property. Assuming the Feddersens properly established a *prima facie* case for conversion, there could be a potential cause of action for this type of tort. Since the Feddersens sufficiently stated a claim and put Kirkland on notice of the conversion claim being asserted against him, this Court will not dismiss Count II of Feddersens' counterclaim.

¶14.   As it pertains to Count III – Defamation, the Feddersens accuse Kirkland of making defamatory remarks of Mr. Feddersen by placing, *inter alia*, in the original complaint and the First Amended Complaint the terms "pedo guy" and "creepy old man." These remarks made by Kirkland accuse Mr. Feddersen of acting inappropriately in the presence of Plaintiff's daughter as Walter Feddersen came onto the property, even at times when there was no showing of the property to potential buyers. To refute these remarks, the Feddersens further argue, that Kirkland admitted that he only has one (1) daughter who was never on the premises therefore, his statements were defamatory and malicious.[6]

¶15.   Other defamatory statements put forth in the Feddersens' motion include Kirkland's allegedly false and fraudulent claims that the Feddersens converted the flat screen TV and pool heater to their possession knowing that on February 4, 2021, the Feddersens former counsel agreed to open the premises to allow Kirkland to remove the remaining items. To support this claim, the Feddersens offer

---

[4] 02.13.2013 Status Conference.

[5] Destruction of Property is a misdemeanor punishable under the Virgin Islands Criminal Code, Title 14 V.I.C. § 1266, which carries a sentence of one-year maximum incarceration and/or a fine of up to $200.

[6] Walter Feddersen's Request for Admissions Nos. 1-8, 45, 94-96.

the affidavit of their former counsel. The Feddersens argue Kirkland's accusations of theft are not subject to any privilege Kirkland posits. The Feddersens rely on the Restatement (Second) of Torts § 558 which has defined the four (4) elements that constitute defamation. To be held liable there must be: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Restatement (Second) of Torts § 558(a)-(d). See also *Joseph v. Daily News Publ'g Co., Inc.*, 57 V.I. 566, 586 (2012).

¶16. Although the statements were made during the preparation stage of the lawsuit, and the Court is not aware of the statements being made beyond the scope of these judicial proceedings, no *prima facie* evidence has been set forth that outweighs the requirements of Rule 8. The Court finds the statements were pertinent to the proceedings, but also finds Kirkland intentionally made false representations.

¶17.    As for the first element, the truth or falsity of a statement is generally a question of fact for the jury, and a statement or communication is only defamatory if "it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id*; *see also* Rest. 2d of Torts § 559. Here, the Court can surmise that Kirkland intentionally made false statements in the original complaint and First Amended Complaint when he referred to Feddersen as a "pedo-guy" and a "creepy old man." Kirkland admitted in his Answers to Walter Feddersen's Interrogatories, that his family and "daughters" were never on the property. This resulted in the Second Amended Complaint being filed without such remarks.

¶18. As for the second element of the defamation claim, "publication" means the "communication intentionally or by negligent act to one other than the person defamed." Rest. 2d of Torts § 557. There are two forms of publication: libel and slander. Libel is described as "the publication of defamatory

9

matter by written or printed words." Rest. 2d of Torts § 568(1). Slander is defined as the "publication of defamatory matter by spoken words." Rest. 2d of Torts § 568(2). The term "unprivileged" is typically referenced to the alleged defamer's inability to demonstrate that he was in some way "privileged" to make the defamatory communication. In applying these rules to the case at hand, there is no indication here that the statements were made to the public beyond the filings with the Court. Hence, the Feddersens fail on this element for defamation.

¶19. As for the third factor, one must establish negligence on the part of the publisher. Rest. 2d of Torts § 558(c). Although the statements were subsequently retracted by Plaintiff, Kirkland made the references in the original complaint and the First Amended Complaint which were published to a public drive. This act still does not rise to the level of negligence, as it was done within judicial proceedings. Hence, none of the elements thus far meet the standard established in the Restatement (Second) of Torts.

¶20. Finally, the fourth element is "either the actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Restatement (Second) of Torts § 558(d). Despite the Court's displeasure of these intentionally false statements made to damage the reputation of the Defendant, there are, nonetheless issues of fact to be decided by the jury, therefore, the Court will not dismiss Count III – Defamation, although the statements were redacted from the Second Amended Complaint. The Feddersens cite to Rest. 2d of Torts § 914, claiming that they are entitled to recover attorney's fees due to Kirkland's false statements of Feddersens' unjust enrichment of the TV and the pool heater. The pertinent rule provides:

> (1) The damages in a tort action do not ordinarily include compensation for attorney's fees or other expenses of the litigation.
> (2) One who through the tort of another has been required to act in the protection of his interest by bringing or defending an action against a third person is entitled to

10

recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

¶21. This request for attorneys' fees does not fail because the underlying claim for defamation discussed *supra* is yet to be decided by the jury. See *supra* at para. 14. Therefore, Count III will not be dismissed.

¶22. With respect to Count IV – Attempt to Obtain Money by False Pretense, or in the alternative, Attempted Conversion and Fraud, Kirkland argues that the action is not sound in tort for two reasons. First, Kirkland posits the claim is subject to the contractual provisions since any attempt to claim Kirkland was excluded from the premises would fall within the lease terms. Second, he also argues the Feddersens' claim of fraud lacks particularity to meet the V.I. R. Civ. P. 9. Rule 9(b) provides in pertinent part, "[i}n alleging fraud …a party must state with particularity the circumstances constituting fraud … (f) an allegation of time or place should be pled where such facts are material to a claim." First, tortious conduct consists of an injury. Second, the Feddersens did not allege fraud with any particularity. Therefore, putting Kirkland on notice pursuant to Rule 8 is insufficient as the Feddersens have not met the added requirements of Rule 9. Therefore, this claim has to be dismissed.

¶23. As it pertains to Count V – Intentional Infliction of Emotional Distress, Kirkland argues that the Feddersens never alleged and neither is it true that Kirkland's conduct was so outrageous or extreme to constitute intentional infliction of emotional distress. In other words, Kirkland's assertions about Mr. Feddersen's sexually inappropriate behavior in his first complaint do not meet the bare minimum of this tort. Courts of the Virgin Islands have consistently recognized that a party may recover damages for the tort of intentional infliction of emotional distress.[7] Under Rest. 2d Torts § 46,

---

[7] *Joseph v. Sugar Bay Club & Resort, Corp.*, No. CIVIL ST-13-CV-491, 2014 WL 1133416, at *3 (V.I. Super. Ct. Mar. 17, 2014), revised in part, No. S.CT.CIV. 2014-0048, 2015 WL 682117 (2015); see also *Thomas Hyll Funeral Home, Inc. v. Bradford*, 233 F. Supp. 2d 704, 714 (D.V.I. 2002).

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress,

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm."

¶24.    To recover damages for intentional infliction of emotional distress, Plaintiff must show that the Defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."[8] When there is no physical injury, the conduct is expected to be sufficiently extreme and outrageous to guarantee that the claim is genuine.[9] Whether counter- Defendants' conduct is so extreme as to permit recovery is initially a question of law for the Court.[10] However, continuous malicious actions must exist before the defendant may be held liable. *Id.* Here, the Feddersens have failed to allege any facts that tend to show intent to cause emotional distress or, alternatively, reckless behavior. Their counterclaim simply states that Kirkland's false statements of sexually inappropriate behavior and other accusations were made with the intent to cause Mr. Feddersen emotional distress. The Court sees no allegation of physical injury. There is no factual record to inform the Court precisely what about Kirkland's actions were so outrageous stretching beyond all possible bounds of decency and there is no evidence of continued malicious actions on the part of the counter-Defendant because he amended his complaint. Finally, there is nothing in the counterclaim to indicate Walter Feddersen is particularly susceptible to emotional distress. The counterclaim plainly states legal conclusions as to

---

[8] *Mann v. The Leather Shop Inc.*, 960 F. Supp. 925, 930 (D.V.I. 1997).

[9] *Fraser v. Kmart Corp.*, Civil No. 2005-0129, 2009 WL 1124953 at *11 (D.V.I. April 24, 2009).

[10] *Webster v. CBI Acquisitions*, Civ. No. 2011-558, 2012 WL 832044 at *5 (Super. Ct. March 5, 2012).

the elements of this claim, yet it fails to name specific facts necessary to survive a motion to dismiss.

For those reasons, this claim, too, will be dismissed.

¶25. With respect to Count VI – Slander of Title, Kirkland argues that this claim arises from his filing of a *lis pendens* concerning the subject property. To prove slander of title, a claimant must show, "(1) publication, (2) with malice, (3) of false allegations concerning the claimant's property, (4) causing pecuniary harm."[11] Title 28 V.I.C. § 130 provides in pertinent part:

> Notices of pending actions affecting title to real estate, and judgments of courts in the Virgin Islands requiring the execution of a conveyance of real estate within the Virgin Islands, shall be entitled to be recorded in the office of the recorder in like manner and with like effect as conveyances of land, duly acknowledged, proved, or certified.

¶26. The purpose of the *lis pendens* notice statute is to give real property owners fair notice that a judgment affecting title to property would mean that whoever owned property at the conclusion of action would be obligated to satisfy judgment. *Board of Directors of Shibui Condominium Assoc. v. Consolidated Int'l, Inc.*, Terr. Ct. St. T. and St. J. 1993, 28 V.I. 57. A *lis pendens* places the world on notice that the property is the subject matter of litigation. *See* 28 V.I.C. § 130. Here, the Feddersens argue Kirkland's filing of a *lis pendens* has slandered the title of the disputed property. The Feddersens argue the *lis pendens* affected title to the property because there was no lawsuit pending at the time the *lis pendens* was filed. They also argue the *lis pendens* was procedurally defective, false, and intentionally inaccurate, but as Kirkland accurately states, they do not demonstrate precisely how the *lis pendens* was defective or what constituted its falsity. Even if the Court were to grant the Feddersens leave to show how the notice was procedurally defective, it still does not outweigh Kirkland's statutory

---

[11] *Thompson v. Florida Wood Treaters, Inc.*, 2009 WL 4730784, at *10 (D.Vi.2009) (citing *System Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1140 (3d Cir.1977)).

right to notify potential buyers the property is the subject of litigation. The Court does not believe that Kirkland's attempt to secure a right to the property by filing a notice of *lis pendens* constitutes slander of title. As such, the Feddersens have failed on this count.

¶27.   With regards to Count VII – Abuse of Process, Kirkland claims that this count must be dismissed because it is based on the sole fact that Kirkland brought the instant lawsuit and filed subsequent amendments to the complaint knowing the former complaints were inaccurate. Abuse of process is defined in Rest. 2d of Torts § 682 that states: "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." The word "primarily" means that "there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." See Comment (b) of Section 682. To be successful, one must establish that: "(1) while acting with an ulterior motive or an improper purpose, (2) the defendant used the process in a manner that would not be proper in the normal prosecution of a case."[12] Improper or ulterior motive is established by a showing of either "coercion to obtain a collateral advantage that is not properly involved in the proceeding and is used to accomplish an end that is not within the regular purview of the process or compels the opposing party to do some collateral thing that he would not be legally and regularly be required to do." See *Arellano v. Rich* , 70 V.I. 696, 720, 2019 VI SUPER 76, ¶ 16. "Regarding the second element, a plaintiff must demonstrate the process was used 'for a purpose other than that for which the process was designed[.]'"[13]

---

[12] *Lee J. Rohn & Assocs., LLC v. Griffiths*, 2020 VI SUPER 106U, ¶ 10.

[13] *Kiwi Construction, LLC, v. Pono*, 2016 WL 213037, at *3, 2016 V.I. LEXIS 1, at *9 (quoting *McGee v. Feege*, 535 A.2d 1020, 1026 (Pa. 1987)).

14

¶28. As it relates to the first prong, the Feddersens argue that when Kirkland filed his ten (10) count complaint, he knew the allegations were false. They further argue Kirkland abused the process by filing the Second Amended Complaint deleting all references to his family being present at 6H Estate Nazareth from the First Amended Complaint when he knew his allegations of Walter Feddersen acting inappropriately in the presence of his daughter were false representations. While the Court finds some of Kirkland's allegations in his initial complaint offensive and inconsistent with responses provided in discovery, it does not find the entire complaint non-meritorious constituting an abuse of process. With regards to the second prong of the abuse of process test, the Court does not find that the filing of the Second Amended Complaint was used in a manner that would not be proper in normal prosecution. Complaints are amended on a regular basis. More specifically, it is the appropriate course of action to properly reflect the allegations contained therein. Therefore, nothing indicates here that Kirkland used the process in an abusive manner. Hence, the abuse of process claim is unpersuasive and will be dismissed.

¶29. Next, Kirkland argues Count VIII - Interference with a Contract, should be denied because it relates to allegations concerning Kirkland's assertion of his right of first refusal, a right under the lease agreement, and therefore remains within contract law. The Rest. 2d of Torts § 766 provides:

> "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

¶30. In order to state a cause of action for a tort under this section, one must allege that there was: (1) an existing contract, (2) that defendant had knowledge of that contract, (3) that the defendant's actions were the proximate cause of the third person's failure to perform, and that (4) the defendant's

actions were intentional, improper, and caused damages.[14] Here, the Feddersens clearly stated there was a contract, i.e., the lease agreement, which provided for a right of first refusal entered into between Kirkland and the Feddersens. Next, it is indisputable that Kirkland was aware of his contractual relationship with the Feddersens. Third, the Feddersens argue that Kirkland interfered with the third-party contractual relations by failing to match the terms of third-party offeror of $2.81 million. They assert Kirkland prevented them from consummating the sale with the third-party offeror. Finally, the Feddersens claim that Kirkland's actions prevented the sale of the property and therefore, caused damage.

¶31.    The Court finds this argument perplexing in that the right of first refusal was an option bestowed upon Kirkland by the Feddersens. The right of first refusal as a tenant is meant to be exercised and Kirkland had the right to bring suit in this action if he believed he was denied a right that he thought was properly exercised. Kirkland's failure to properly invoke the right has no bearing upon his possession of the right nor his exercising of the right, therefore there can be no interference with the contract with the third party. In fact, the very purpose of the right is to act upon, if and when it becomes necessary. Kirkland was invited to exercise the right of first refusal, hence, opting to act on the right does not equate to an interference of a given right. Therefore, Kirkland's failure to properly exercise a right bestowed upon him, cannot now become the object of interference. This is an implausible argument not found under any theory in tort law, therefore Count VIII will be dismissed.

¶32.    Finally, Kirkland seeks to dismiss Count IX – Negligence. The Restatement of Torts defines ordinary negligence as "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." Rest. 2d of Torts, § 282 (1965). "The foundational

---

[14] *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 452, 35 V.I. 356, 369 (D.V.I. 1997).

elements of negligence" are: "(1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff."[15] Here, to properly address the Feddersens' negligence claim, each duty of care in the counterclaim must be analyzed separately. First, the Feddersens argue Kirkland had a duty to care for and not to damage their locks. Second, Kirkland also had a duty not to make false and untrue statements about the Feddersens. Third, Kirkland had a duty not to attempt to obtain money by false pretense; a duty not to cause emotional distress; and finally, a duty not to assert false claims. A reasonable jury could find Kirkland was negligent in this alleged conduct. The duty not to destroy the property, i.e., house and gate locks, however, derives from the lease agreement. See *supra* at para. 11.

¶31. Next, the Feddersens state Kirkland owed a duty to not make false and untrue statements about Mr. Feddersen and not to misrepresent any facts. Likewise, he had a duty not to attempt to obtain money by false pretense, to cause emotional distress, or to assert false claims. The Feddersens have merged all of these issues into a negligence claim. However, except for destruction of the locks which is expressly prohibited by the lease agreement, all other allegations constituting negligence are sound in tort. The Feddersens are not precluded from raising these allegations here because there is absolutely no clause in the lease agreement that speaks to duties not to make false statements or duties not to attempt to obtain money by false pretense. The Court finds all these statements stand on their own. Thus, with the exception of the duty not to destroy the property, the Court will not dismiss this claim for negligence.

---

[15] *Machado v. Yacht Haven U.S.V.I., LLC,* 61 V.I. 373, 380 (V.I. 2014).

### III.    CONCLUSION

¶32.    The Court finds that of the nine (9) counterclaims, five (5) fail to meet the standard under Rule 8. Attempt to obtain money by false pretense, intentional infliction of emotional distress, slander of title, abuse of process, and interference with contract will be dismissed. The four (4) remaining counterclaims of breach of lease, intentional destruction or property, defamation, and negligence shall remain.  An Order of even date follows.

Dated: May /8 , 2023

**Renée Gumbs Carty**
Senior Sitting Judge, Superior Court
of the Virgin Islands

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Latoya Camacho
Court Clerk Supervisor 5 /18 /2023

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
******

| | | |
|---|---|---|
| JOHN C. KIRKLAND, | ) | CASE NO.: ST-21-CV-051 |
| | ) | |
| Plaintiff, | ) | ACTION FOR BREACH OF |
| v. | ) | CONTRACT, BREACH OF IMPLIED |
| | ) | DUTY OF GOOD FAITH AND FAIR |
| WALTER FEDDERSEN, JANE FEDDERSEN, | ) | DEALING, BREACH OF FIDUCIARY |
| JEYAN K. STOUT, and STOUT REALTY, LLC | ) | DUTY, TRESPASS, NEGLIGENT |
| d/b/a COLDWELL BANK STOUT REALTY, | ) | SUPERVISION, CONVERSION, |
| | ) | UNJUST ENRICHMENT AND |
| Defendants. | ) | DECLARATORY JUDGMENT |
| | ) | |

WALTER FEDDERSEN and JANE FEDDERSEN,)

| | | |
|---|---|---|
| | ) | CASE NO.: ST-23-CV-050 |
| Plaintiffs, | ) | |
| | ) | ACTION FOR BREACH OF |
| v. | ) | FIDUCIARY DUTY, NEGLIGENCE, |
| | ) | BREACH OF LISTING AGREEMENT, |
| JEYAN K. STOUT, and STOUT REALTY, LLC | ) | BREACH OF INDEMNIFICATION & |
| d/b/a COLDWELL BANK STOUT REALTY, | ) | CONTRIBUTION & DECLARATORY |
| | ) | RELIEF |
| Defendants. | ) | |
| | ) | 2023 VI Super 25U |

**A.J. STONE, ESQ.**
BoltNagi P.C.
Merchants Financial Center
4608 Tutu Park Mall, Ste. 202
St. Thomas, V.I. 00802
*Attorneys for Plaintiff*

**A. JEFFREY WEISS, ESQ.**
9800 Buccaneer Mall
Building 1, Suite 15
St. Thomas, V.I. 00802
*Attorneys for Defendants*
*Walter Feddersen and Jane Feddersen*

**KYLE R. WALDNER, ESQ.**
Waldner Law, P.C.
1026 Norre Gade
Kings Quarter
St. Thomas, V.I. 00802
*Attorneys for Defendants*
*Jeyan K. Stout & Stout Realty d/b/a*
*Coldwell Bank Stout Realty*

**ROBERT L. KING, ESQ.**
King & King Law, P.C.
5043 Norre Gade, 11A, Ste. 2
St. Thomas, V.I. 00802
*Attorneys for Defendant*
*Jeyan K. Stout*

## <u>ORDER</u>

**THIS MATTER** having come before the Court on Plaintiff's motion to dismiss counterclaims, and consistent with the memorandum opinion of even date, it is hereby

**ORDERED** that the motion to dismiss is **GRANTED** in part and **DENIED** in part, and it is further

**ORDERED** that Count IV - attempt to obtain money under false pretenses, Count V - intentional infliction of emotional distress, Count VI- slander of title, Count VII- abuse of process, and Count VIII - interference with a contract of the counterclaims are **DISMISSED**, and it is hereby

**ORDERED** that Count I- Breach of Lease, Count II- Intentional Destruction of Property, Count III – Defamation, and Count IX -Negligence shall remain; and it is further

**ORDERED** that a copy of this Order shall be distributed to the parties of record.

Dated: May 18 , 2023

**Renée Gumbs Carty**
Senior Sitting Judge, Superior Court
of the Virgin Islands

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Latoya Camacho
Court Clerk Supervisor 3 / 18 / 2023

2